KEWIN v MASSACHUSETTS MUTUAL LIFE INSURANCE
COMPANY

Docket Nos. 60756, 60757. Submitted January 11, 1979 (Calendar No.
14).—Decided August 5, 1980. Rehearing denied *post,* 1116.

Harland J. Kewin brought an action against Massachusetts Mu-
tual Life Insurance Company for damages arising out of non-
payment of insurance benefits under a disability income protec-
tion policy. The plaintiff alleged that he suffered mental an-
guish as the result of the refusal of the insurer in bad faith to
pay all of his claim and that he was entitled to "punitive"
damages. A jury in Genesee Circuit Court, Donald R. Freeman,
J., returned a verdict for the plaintiff which included $75,000
for mental or emotional distress and $50,000 for exemplary
damages. The Court of Appeals, Danhof, C.J., and Allen and
Heading, JJ., reversed as to the award for distress on the
ground that the damages, although recoverable in an action for
a breach in bad faith of an insurance contract, were not
adequately pled, and that the exemplary damages were for the

REFERENCES FOR POINTS IN HEADNOTES

[1, 7, 14, 18] 22 Am Jur 2d, Damages §§ 20, 55-58.
[2] 22 Am Jur 2d, Damages § 47.
[2, 5, 7, 12, 13, 15-18, 20, 21, 25, 27, 28, 30] 22 Am Jur 2d, Damages
§ 195.
Mental anguish as element of damages in action for breach of
contract to furnish goods. 88 ALR2d 1367.
[3, 4, 6] 43 Am Jur 2d, Insurance § 194.
[5, 15, 17, 20] 22 Am Jur 2d, Damages §§ 55-58.
[8, 28-30] 22 Am Jur 2d, Damages § 237.
[9, 11-13, 25, 28, 30] 22 Am Jur 2d, Damages § 245.
[10] 22 Am Jur 2d, Damages § 243 *et seq.*
[12, 13, 18, 21] 44 Am Jur 2d, Insurance § 1797.
Damages recoverable from insurer for failure or delay in making
payments due under contract. 37 ALR2d 538.
[19, 20] 17 Am Jur 2d, Contracts § 441.
[22] 22 Am Jur 2d, Damages § 342.
[23] 22 Am Jur 2d, Damages §§ 270, 271, 283.
[24, 25, 27] 22 Am Jur 2d, Damages §§ 272, 283.
[25, 28-30] 22 Am Jur 2d, Damages § 197.
[26] 22 Am Jur 2d, Damages § 295.

same distress (Docket No. 31474). The parties appeal. In an opinion by Justice Kavanagh, with Chief Justice Coleman and Justices Levin, Fitzgerald, Ryan, and Blair Moody, Jr., concurring, the Supreme Court *held:*

1. The damages recoverable for breach of contract are those that arise naturally from the breach or that were in the contemplation of the parties at the time the contract was made. Application of this principle to a commercial contract generally limits damages to the monetary value of the contract had the breaching party fully performed under it. Thus it is generally held that damages for mental distress cannot be recovered in an action for breach of a contract. One exception to this rule is recognized in cases where the contract is not commercial but involves personal rights, dignity, and emotions so that mental distress is a particularly likely result of a breach; damages for that distress may reasonably be said to have been within the contemplation of the parties when the contract was made.

2. Insurance contracts for disability income protection are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event. The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. Breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation, but recovery for those consequences is generally not allowed. Absent proof that they were within the contemplation of the parties at the time the contract was made, the damages recoverable do not include compensation for mental anguish.

3. Exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. Those cases which permit recovery of exemplary damages as an element of damages involve tortious conduct by the defendant, and the exemplary damages are compensation for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, willfully, and wantonly inflicted. In the commercial contract case, unlike tort and marriage contract actions, the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation. The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith. In a common-law action for a commercial contract, exemplary damages may not be awarded absent allegation and proof of tortious conduct existing independent of the breach.

4. The cause of action well pleaded and proven by the

plaintiff in this case was that for breach of the commercial contract alone. If Michigan recognizes a tort action for intentional infliction of mental distress, such a cause of action was neither pleaded nor proven by the plaintiff. It cannot fairly be said that the complaint put the defendant on notice that allegations of fraud, undue influence, or invasion of privacy were to be defended. The complaint does contain conclusory language to the effect that the defendant engaged in misrepresentation and deceit in handling the claim, but the plaintiff alleged and proved no more than the failure of the defendant to discharge its obligations under the disability insurance contract. The Court declined to declare the mere bad-faith breach of an insurance indemnity contract to be an independent and separately actionable tort, and thereby to open the door to recovery for mental pain and suffering caused by breach of a commercial contract. Therefore, neither damages for mental distress nor exemplary damages are properly recoverable in this case.

Justice Williams dissented as to whether damages for emotional distress are recoverable in this case.

1. The general rule is that damages for breach of contract are limited to those arising naturally from the breach, or those which were in the contemplation of the parties at the time they made the contract as the probable result of the breach. The first branch of the rule is one of imputed foreseeability or contemplation, damages which any reasonable person should have foreseen at the time the contract was formed, to be assessed by an objective standard. The second branch, that of actual foreseeability because of particular knowledge, is not at issue in this case.

2. Emotional distress, traditionally, has not been considered a proper element of damage in an action for breach of contract because of its vagueness and difficulty of proof. However, where the contract is found to be primarily personal, involving matters of mental concern and solicitude, there have been awards of contract damage for emotional distress, because a breach of duty in such a contract will necessarily or reasonably result in mental anguish or suffering and it should be known to the parties from the nature of the contract that such suffering will result from its breach. Personal contracts are contracts which involve personal feelings and in which mental suffering is likely to be most poignant, despite their literal commercial nature. Typical examples include contracts to marry, to provide passenger service, to provide lodgings at a public inn, to dispose of dead bodies, to deliver messages about a person's death, to

provide public entertainment or amusement, and to provide care, room and board.

3. Three elements must be proven for an award of damages for emotional distress in a contract action: that the contract involves matters of mental concern and solicitude, that is, that emotional distress in the event of breach was foreseeable at the time of contract formation; that the contract has been breached; and that the breach has caused mental anguish. Rather than analysis by labelling the contract either primarily "personal" or primarily "commercial", the critical and preferable inquiry is whether the damage claimed was foreseeable, that is, whether it naturally arose from the breach or whether a reasonable person in the position of the breaching party, with that party's knowledge, could reasonably have been expected to foresee the distress resulting from the breach. If the court determines that the claim does not transgress the foreseeability limitation, that is, that the parties had contracted to compensate the plaintiff for the "usual" damages for emotional distress, the plaintiff need only show that the contract has been breached and that the breach has in fact caused the emotional distress which may be proved with reasonable certainty. The nature of the breach, whether simple, innocent, aggravated, outrageous, or otherwise, is not a factor in this contractual damage inquiry. The degree of breach may, on the facts, exacerbate the degree of distress, but no more than a simple breach is required to establish a prima facie cause of action for emotional distress arising under the contract. If each of these elements has been proved, an award of damages for emotional distress would fulfill the insured's disappointed expectation interest without imposing an undue burden on the defaulting insurer. The aim of risk allocation will have been effectuated and the promisee will have been afforded the benefit of the bargain.

4. Disability insurance contracts are primarily personal contracts involving matters of mental concern and solicitude. This characterization merely provides a shorthand means to express the finding that disability insurance contracts are of such a nature that emotional distress may naturally arise from their breach or may have been within the contemplation of a reasonable disability insurer at the time the contract was formed. Admittedly, disability insurance contracts involve a pecuniary element because they are agreements to pay a sum of money upon the occurrence of a specified event. However, such contracts have as their central purpose certain highly personal ends, including: the minimization of financial hardship when a

disability occurs, the protection of material security from the harsh consequences of disability, the provision of emotional security through the insured's anticipation of being insulated from such a financial disaster, and the peace of mind which the promise of payment in the event of disability will provide. The allowance of damages for emotional distress will work no hardship on the insurer because, by the very nature of the risks insured against, a disability insurer must be presumed to have contemplated that emotional distress would be a consequence of breach.

5. There is no dispute that the insurer in this case breached its contract by failing to pay disability benefits. Even a simple refusal to pay is a denial of an insured's bargain, *i.e.,* the insured's peace of mind that provision has been made for the exigencies of disability. What injures the policyholder is not the insurer's intention to cause harm but, rather, the failure to tender benefits determined to be due and resulting in emotional distress. In this case the trial court's instruction to the jury was more stringent than necessary because it required them to find the plaintiff's distress a result of the defendant's "knowing, reckless, bad faith" to find liability. The fact that the jury was asked to assess "emotional distress" in this case rather than other, perhaps more tangible, damages is of no import. Therefore, the jury's award in this matter must be affirmed.

6. The plaintiff made sufficient allegations to support a recovery of damages for mental distress arising from the defendant's breach of the disability insurance contract. The General Court Rules of 1963 were drafted to substitute notice or fact pleading for rigid forms of action, and the pleading need only reasonably inform the adverse party of damages which naturally flow from the injury alleged. The trial court, in deciding a motion during trial to amend the complaint, found that the amendment was unnecessary because there was a general claim, within the original complaint, that there was emotional distress and difficulty arising out of the defendant's failure to meet its obligations under the insurance contract. The plaintiff's factual statements and averments were sufficient to put the defendant on notice that the plaintiff was seeking damages for his emotional distress for breach of contract, because the emotional distress can be traced to the act complained of and would naturally flow from the injury alleged. The defendant cannot argue that it has been unfairly surprised, because it has been reasonably notified from the pleadings that such a claim would be made.

7. Exemplary damages, much like damages for emotional

distress, are intended to compensate for injured feelings. The instructions given to the jury in this case on these two kinds of damages were directed to the injury to the plaintiff's feelings resulting from the defendant's conduct. The jury's award of both damages constituted double recovery for the same wrong. Therefore, the award of $50,000 as exemplary damages should be vacated.

The decision of the Court of Appeals is reversed as to the award of exemplary damages, and is otherwise affirmed.

79 Mich App 639; 263 NW2d 258 (1977) affirmed in part, reversed in part.

OPINION OF THE COURT

1. DAMAGES — CONTRACTS — BREACH — ELEMENTS OF DAMAGE.

Damages recoverable for breach of contract are limited to those that arise naturally from the breach or that were in the contemplation of the parties at the time the contract was made.

2. DAMAGES — CONTRACTS — BREACH — ELEMENTS OF DAMAGE.

Damages for breach of a commercial contract generally are limited to the monetary value of the contract had the breaching party fully performed under it; thus, as a general rule damages for mental distress cannot be recovered in an action for breach of contract.

3. INSURANCE — CONTRACTS.

Insurance contracts are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event.

4. DAMAGES — INSURANCE — CONTRACTS — BREACH.

The damage suffered upon the breach of an insurance contract is capable of adequate compensation by reference to the terms of the contract.

5. DAMAGES — INSURANCE — CONTRACTS — BREACH — ELEMENTS OF DAMAGE.

Breach of an insurance contract may result in annoyance and vexation, but recovery for those consequences is not generally allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made.

6. DAMAGES — INSURANCE — CONTRACTS — BREACH — DISABILITY INCOME INSURANCE.

A disability income protection insurance policy is a commercial

contract, the breach of which gives rise only to a cause of action in contract.

7. DAMAGES — INSURANCE — CONTRACTS — BREACH — DISABILITY INCOME INSURANCE — ELEMENTS OF DAMAGE.

The damages recoverable for the breach of a disability income protection insurance policy are those damages that arise naturally from the breach, or which can reasonably be said to have been in contemplation of the parties at the time the contract was made; absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish.

8. DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant.

9. DAMAGES — EXEMPLARY DAMAGES — CONTRACTS — BREACH.

Exemplary damages are generally not recoverable in cases involving only a breach of contract.

10. DAMAGES — EXEMPLARY DAMAGES — WORDS AND PHRASES.

Exemplary damages are properly regarded as compensatory; they are given as compensation for kinds of harm, such as breach of a contract to marry, that cannot easily be estimated in terms of money.

11. DAMAGES — EXEMPLARY DAMAGES — CONTRACTS.

Exemplary damages may not be awarded in a common-law action for breach of a commercial contract, absent allegation and proof of tortious conduct existing independent of the breach; the wrong suffered by the plaintiff is a financial one, susceptible of accurate pecuniary estimation, which is the same whether the breaching party acts with a completely innocent motive or in bad faith.

12. DAMAGES — INSURANCE — CONTRACTS — MENTAL DISTRESS — EXEMPLARY DAMAGES.

Neither damages for mental distress nor exemplary damages are properly recoverable in an action arising out of nonpayment of insurance benefits where the facts alleged in the complaint and established at trial do not support the conclusory language in the complaint that the defendant engaged in misrepresentation and deceit in handling the claim, but merely demonstrate that the nature of the cause of action was for breach of contract, albeit a bad-faith breach (GCR 1963, 111.1).

13. TORTS — INSURANCE — BREACH OF CONTRACT.

The mere bad-faith breach of an insurance contract is not an independent and separately actionable tort; therefore, the door is not open to recovery for mental pain and suffering caused by breach of a commercial contract.

DISSENTING OPINION BY WILLIAMS, J.

14. DAMAGES — CONTRACTS — BREACH.

*Damages for breach of contract generally are limited to those arising naturally from the breach or those which were in the contemplation of the parties at the time they made the contract as the probable result of the breach.*

15. DAMAGES — CONTRACTS — BREACH — MENTAL DISTRESS.

*Damages have been awarded for emotional or mental distress in an action for breach of contract where the contract in dispute has been found to be primarily personal in nature, involving matters of mental concern and solicitude; however, where the contract is found to be primarily commercial, involving matters of pecuniary aggrandizement, such an award would violate the principles of the foreseeability of damages for breach of contract.*

16. DAMAGES — CONTRACTS — BREACH — MENTAL DISTRESS.

*Vexation and annoyance are not subjects of compensation in an action for breach of contract unless to the extent that the contract was made specially to procure exemption from them; where a contract is made to secure relief from a particular inconvenience or annoyance, or to confer a particular enjoyment, the breach, so far as it disappoints that purpose, may give a right to damages appropriate to the objects of the contract.*

17. DAMAGES — CONTRACTS — BREACH — MENTAL DISTRESS.

*The elements which must be proved for an award of damages for emotional distress in an action for breach of contract are: that the contract involves matters of mental concern and solicitude, that is, that emotional distress in the event of breach was foreseeable; that the contract has been breached; and that the breach has caused mental anguish.*

18. DAMAGES — INSURANCE — CONTRACTS — BREACH — MENTAL DISTRESS.

*Disability insurance contracts are primarily personal contracts, involving matters of mental concern and solicitude, the simple breach of which will give rise to an action for damages for*

*emotional distress; given the nature of such contracts, the likelihood of emotional distress resulting from a breach by the insurer must have been either within the contemplation of the promisor at the time of contract formation or the natural result of breach.*

19. CONTRACTS — BREACH — DEFINITION.

*A promisor is guilty of a breach of contract which furnishes a basis for a cause of action when the promisor fails in any respect to carry out an existing duty calling for a present, immediate performance under the contract.*

20. DAMAGES — CONTRACTS — BREACH — MENTAL DISTRESS.

*Only a simple breach of contract is required to support an award of damages for emotional distress; to deny a recovery for contemplated emotional distress because the defaulting promisor did not act in bad faith would directly contravene the principles of contract law and the foreseeability of such damages in certain cases of contracts involving matters of mental concern and solicitude.*

21. INSURANCE — CONTRACTS — BREACH — MENTAL DISTRESS.

*A simple refusal to pay disability insurance benefits which are determined to be due is a denial of the insured's basis of the bargain, that is, the insured's peace of mind that provision has been made for the unsettling exigencies of disability; what injures the policyholder is not the insurer's intention to harm but, rather, the insurer's failure to tender benefits with the resulting emotional distress.*

22. DAMAGES — MENTAL DISTRESS — QUESTION FOR JURY.

*The award of damages or appraisal of adequate compensation, as a general rule, is a question solely left for the determination of the jury; the fact that a jury was asked to assess damages for mental or emotional distress rather than other, perhaps more tangible, damages is of no import in considering an appeal from such an award.*

23. PLEADING — GENERAL COURT RULES.

*The General Court Rules of 1963 substituted notice or fact pleading for rigid forms of action; the requirement was liberalized to the extent that no pleading shall be deemed insufficient if it reasonably informs the adverse party of the nature of the cause he is called upon to defend (GCR 1963, 111).*

24. PLEADING — DAMAGES — SPECIAL DAMAGES.

*The General Court Rules require that where special damages are*

claimed, the pleading need only reasonably inform the adverse party that the injury sought to be proved can be traced to the act complained of and the special damages are such as would naturally follow from the alleged injury (GCR 1963, 111, 112.8).

25. PLEADING — DAMAGES — MENTAL DISTRESS — INSURANCE — CONTRACTS — BREACH.

A plaintiff's factual statements and averments in an action for breach of a disability insurance contract were sufficient to put the defendant insurer on notice that the plaintiff was seeking damages for emotional distress arising out of the defendant's failure to pay benefits under the policy where the complaint alleged that the defendant had exhibited a "negative" attitude toward the plaintiff's claim, that the defendant's investigation of the claim violated the "spirit and intent" of the parties' contract, that the plaintiff had sought to avoid further conflict with the insurer while he was disabled, under the care of physicians, and suffering the effect of his injury, and that the defendant's breach amounted to utter lack of good faith, which bordered on deceit; and where the plaintiff's later claim for punitive damages amplified the claims for mental distress because punitive damages have traditionally included compensation for injured feelings (GCR 1963, 111, 112.8).

26. PLEADING — COMPLAINT — AMENDMENT.

The General Court Rules provide for great liberality in the amendment of pleadings; even substantial omissions from a complaint should be overlooked if it is nonetheless sufficient to provide the defendant with notice of the claims against which the defendant must defend (GCR 1963, 111, 118.3).

27. PLEADING — DAMAGES — MENTAL DISTRESS — CONTRACTS.

The novel nature of a plaintiff's claim in contract against a disability insurer for emotional distress should not add to the plaintiff's burden of pleading; to rule otherwise would be to deter future untested, imaginative and persuasive claims, and a defendant cannot argue that it was unfairly surprised by the novelty of the claim where it has been reasonably notified from the pleadings that such a claim would be made (GCR 1963, 111, 112.8).

28. DAMAGES — EXEMPLARY DAMAGES — MENTAL DISTRESS — DOUBLE RECOVERY.

Exemplary damages, much like damages for emotional distress, are intended to compensate the plaintiff for injured feelings occasioned by the defendant's conduct; where both exemplary

*damages and damages for emotional distress are claimed for
the same injury and the instructions to the jury on both claims
were directed to the same injury to the plaintiff's feelings, an
award by the jury of both kinds of damages constitutes double
recovery.*

29. DAMAGES — EXEMPLARY DAMAGES — DOUBLE RECOVERY.

*A double recovery for the same wrong is impermissible where the
damages are intended to compensate the plaintiff, exemplary
damages for example, rather than to punish the defendant.*

30. DAMAGES — EXEMPLARY DAMAGES — MENTAL DISTRESS — DOUBLE
RECOVERY.

*An award of exemplary damages resulting from an insurer's
breach of a disability insurance contract is vacated as constitut-
ing an impermissible double recovery for the same injury to the
plaintiff's feelings where the plaintiff also sufficiently alleged a
claim for emotional distress arising from the breach for which
the jury also awarded damages.*

*René J. Ortlieb (David Melkus,* of counsel) for
plaintiff.

*Rubenstein, Pruchnicki & Chittle* for defendant.

Amici Curiae:

*Dickinson, Wright, McKean, Cudlip & Moon* (by
*Fred W. Freeman, John E. S. Scott, Robert S.
Krause,* and *Kenneth J. McIntyre)* for American
Council of Life Insurance and the Health Insur-
ance Association of America.

*Bacalis & Associates, P.C.* (by *Jesse R. Bacalis,
Christopher W. Wiggins* and *Willis W. Snyder).*

KAVANAGH, J. This dispute arises out of non-
payment of benefits alleged to be due under insur-
ance policies issued to the plaintiff by the defen-
dant. The defendant appealed from a jury verdict
rendered on March 29, 1976, in Genesee Circuit
Court. The Court of Appeals affirmed in part and
reversed in part. 79 Mich App 639; 263 NW2d 258

(1977). This Court granted leave to appeal and cross appeal limited to the following issues:

"(1) What causes of action and damage remedies are available to an insured who alleges that he has suffered mental anguish as a result of his insurance company's bad-faith refusal to honor a valid claim; [and]

"(2) What causes of action and elements of damage were properly pled by the plaintiff?"

On September 15, 1972, the defendant, Massachusetts Mutual Life Insurance Company, issued two policies of insurance to the plaintiff, Harland Kewin. One policy provided for disability income protection insurance and the other for life insurance. It is the alleged breach of the former policy that is of concern in this appeal. Under the terms of the policy, the plaintiff was entitled to benefits of $500 per month, after a 30-day waiting period, if he became disabled from performing substantially all of the duties of his usual occupation.

On December 2, 1972, the plaintiff suffered a severe injury to his right knee when he was involved in a motorcycle accident in Florida. After the plaintiff filed a claim for benefits based on this injury, the defendant informed him of the need for a monthly doctor's report substantiating the disability. To facilitate the procedure and to minimize the inconvenience to the plaintiff, it was suggested by Mr. Pemberton, a claims representative employed by the defendant, that the plaintiff visit a local doctor at the defendant's expense. Thereafter, the plaintiff visited Dr. Harris, who forwarded a monthly report to the defendant beginning in March of 1973.

Prior to this conversation between Mr. Pemberton and the plaintiff, the defendant engaged Retail Credit Corporation on January 3, 1973, to do an

investigation and report concerning the leg injury claim. That report was received by the defendant on January 15, 1973, and was followed by others which detailed the employment and other activities engaged in by the plaintiff. The report indicated that the plaintiff walked on crutches but was anticipating full-time employment at a Flint realty company as soon as he was able.

The defendant began payment of the monthly benefits due the plaintiff on February 9, 1973, which payment was for the month of January. Late payments for the months of February and March followed. On May 2, 1973, the plaintiff talked on the telephone with Mr. Pemberton and one other representative of the defendant concerning a possible settlement of the plaintiff's claim.

It was agreed during this conversation that the plaintiff would accept $500 for the April benefit payment already due him, plus an advance payment of $1,000, the equivalent of two months' benefits. In exchange the plaintiff agreed to waive any rights to further benefits until October 1, 1973, and further, waive his rights under the policy to forego payment of premiums during that period. Pursuant to this conversation, the defendant prepared two checks, one for $500 and the other for $1,000, and sent them to the plaintiff along with a letter detailing the agreement. The plaintiff negotiated each check.

The plaintiff, in November of 1973, requested and was sent additional claim forms, but never returned them to the defendant. No further correspondence was had between the parties until the plaintiff filed suit in August of 1974.

A jury trial was held, and a verdict in favor of the plaintiff was returned. The jury awarded $16,-500 in benefits under the disability insurance con-

tract; $798.40 as agreed cash value of the related life insurance policy; $75,000 for mental or emotional distress; and $50,000 for exemplary damages. The defendant's motions for a new trial, remittitur, and judgment notwithstanding the verdict were denied, and a claim of appeal was filed in the Court of Appeals.

On November 21, 1977, the Court of Appeals held that a disability insurance contract is a contract involving matters of mental concern and solicitude and that, upon proper pleading. and proof, mental distress damages are recoverable for breach of the contract. The Court also held that the mental distress damages and exemplary damages awarded by the jury in this case were for the same mental anguish, and accordingly reversed the award of $75,000 for mental or emotional distress. Finally, the Court held that the plaintiff's complaint was insufficiently specific to support either a claim in tort for intentional infliction of emotional distress or a claim in contract for mental anguish damages, but that it did support a recovery of exemplary damages.

The parties do not dispute that a cause of action in contract arises upon a bad-faith breach of a disability insurance contract. Their positions differ sharply, however, on the question of whether and under what circumstances mental distress and exemplary damages are recoverable as a consequence of such a breach.

Under the rule of *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made. 5 Corbin, Contracts, § 1007. Application of this principle in the commercial

contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it. Thus, it is generally held that damages for mental distress cannot be recovered in an action for breach of a contract.

There are exceptions[1] to the general rule limiting the recovery for breach of contract. We are asked to apply an exception recognized in *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957), to this case involving disability insurance. The plaintiff in *Stewart* brought suit on a breach of contract theory against the defendant doctor. The defendant had promised to deliver plaintiff's child by Caesarean section, but did not do so. It was as-

---

[1] See 5 Corbin, Contracts, § 1076, p 427; 1 Restatement Contracts, § 341, p 559. The American Law Institute has proposed the following rule with respect to recovery for mental or emotional disturbance in a breach of contract case, Restatement Contracts, 2d (Tentative Draft No 14, 1979), § 367, pp 100-101:

"Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."

The comment to this section explains the application of it:

"Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure. There are, however, two exceptional situations where such damages are recoverable. In the first, the disturbance accompanies a bodily injury. In such cases the action may nearly always be regarded as one in tort, although most jurisdictions do not require the plaintiff to specify the nature of the wrong on which his action is based and award damages without classifying the wrong. See Restatement, Second, Torts §§ 436, 905. In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. *Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.* (Emphasis added.)

serted that as a result of the breach of the agreement, the plaintiff's child was stillborn.

In writing for four members of this Court, Justice TALBOT SMITH wrote to allow recovery for mental distress:

"When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."

The nature and object of the agreement justified the treatment accorded it in *Stewart.* A contract to perform a Caesarean section is not a commercial contract in which pecuniary interests are most important. Rather, such a contract involves "rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal". *Stewart,* 469. Where such interests are invaded by breach of a contract meant to secure their protection, mental distress is a particularly likely result. Flowing naturally from the breach, these injuries to the emotions are foreseeable and must be compensated despite the difficulty of monetary estimation.

Insurance contracts for disability income protection do not come within the reach of *Stewart.* Such contracts are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event, *Secor v Pioneer Foundry Co,* 20 Mich App 30, 35; 173 NW2d 780

(1969); 14 Michigan Law & Practice, Insurance, § 71, p 50. The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. We recognize that breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation. But recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made. 22 Am Jur 2d, Damages, § 64, p 97. See, also, *Scottish Union & National Ins Co v Bejcy,* 201 F2d 163, 166 (CA 6, 1953).

The plaintiff argues that apart from *Stewart, supra, Miholevich v Mid-West Mutual Automobile Ins Co,* 261 Mich 495; 246 NW 202 (1933), permits recovery for mental distress damages in breach of insurance contract cases. *Miholevich* involved an automobile collision liability insurance policy issued to the plaintiff by the defendant. Under the contract, the defendant promised to satisfy any judgment rendered against the plaintiff. Such a judgment was in fact obtained by a third party, but the defendant wilfully neglected to satisfy it until after the plaintiff had been placed in jail for failure to pay the judgment.

In affirming the award the Court said:

"The damages claimed by plaintiff are for a breach of defendant's contract to pay the judgment. In *Frederick v Hillebrand,* 199 Mich 333, 341 [165 NW 810 (1917)], in which damages were claimed for a breach of contract, it was said:

" 'The damage which a party ought to receive in respect to such breach of contract may be said to be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the

contemplation of both parties at the time they made the contract, as the probable result of a breach of it.'

"The rule thus stated is in accord with that laid down in the English case of *Hadley v Baxendale,* 9 Exch 341 (156 Eng Rep 145; 23 LJ Exch 179; 18 Jur 358; 5 Eng Rul Cas 502), and has been followed quite generally by all the courts in this country. (See citations in footnote in 8 RCL, pp 455 *et seq.)* Let us apply it to the facts in this case. The plaintiff was a man without means. He owned an automobile, and was aware of the fact that a judgment might at some time be recovered against him for his negligence in driving it. It must be presumed that he knew that, if he did not pay such judgment, a body execution might issue against him. To protect himself from this liability he sought and secured the policy in question. The defendant must also be presumed to have known that, in case of plaintiff's default in payment, his arrest might follow. Must it not then be reasonably supposed that the liability to arrest to which plaintiff was exposed was in the contemplation of these parties at the time the contract was entered into? While there are many cases in which this rule of law has been so applied, we find none involving the question here presented.

"The wilful neglect of the defendant to pay the judgment was not due to an oversight on its part. It resulted in the imprisonment of plaintiff, with the shame and mortification as well as loss of time incident thereto. A reasonable interpretation of the contract and the application of the law thereto justified the award of damages by the trial court. No claim is made that it is excessive."

In this case the insurance company owed the plaintiff no duty as his agent to negotiate with or pay a third party for the insured's liability. This is an indemnity contract and the insured and insurer were dealing directly. No reason appears to conclude that either party contemplated any special damages, and certainly none can be said to flow

naturally from the breach. *Scottish Union, supra,* 166.

For the above reasons, we hold that a disability income protection insurance policy contract is a commercial contract, the mere breach of which does not give rise to a right to recover damages for mental distress. The damages recoverable are those damages that arise naturally from the breach, or which can reasonably be said to have been in contemplation of the parties at the time the contract was made. Absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish.

In Michigan, exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. *Ten Hopen v Walker,* 96 Mich 236, 240; 55 NW 657 (1893); *McChesney v Wilson,* 132 Mich 252, 258; 93 NW 627 (1903). Our review of the precedent indicates that those cases which permit recovery of exemplary damages as an element of damages involve tortious conduct on the part of the defendant. See, *e.g., McFadden v Tate,* 350 Mich 84; 85 NW2d 181 (1957) (assault and battery); *Scripps v Reilly,* 38 Mich 10 (1878) (libel); *Welch v Ware,* 32 Mich 77 (1875) (assault and battery). An award of exemplary damages is considered proper if it compensates a plaintiff for the "humiliation, sense of outrage, and indignity" resulting from injuries "maliciously, wilfully and wantonly" inflicted by the defendant. *McFadden, supra,* 89. The theory of these cases is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings.

In cases involving only a breach of contract, however, the general rule is that exemplary dam-

ages are not recoverable. 9 Michigan Law & Practice, Damages, § 91, p 88; 22 Am Jur 2d, Damages, § 245, p 337. Just as with that denying damages for mental distress, the theory underlying the denial of exemplary damages in breach of contract cases is that the plaintiff is adequately compensated when damages are awarded by reference only to the terms of the contract. One exception to the rule was discussed by Professor Corbin in the following terms:

"The damages that are called punitive in breach of promise cases can generally be properly regarded as *compensatory. They are given as compensation for kinds of harm that cannot easily be estimated in terms of money.* In this respect, the injury caused by breach of promise of marriage has much in common with those injuries that are caused in cases of tort. It is equally obvious that the injuries suffered in breach of promise cases include much that is *not* in common with those that are inflicted by the breach of a commercial bargain. Therefore, the courts have not applied the same measure of recovery; and there is no reason for a supposed rule that would require them to do so." 5 Corbin, *supra*, § 1077, p 442 (emphasis added).

In the commercial contract situation, unlike the tort and marriage contract actions, the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation. The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith. *Durfee v Newkirk,* 83 Mich 522, 527; 47 NW 351 (1890); *Caradonna v Thorious,* 17 Mich App 41; 169 NW2d 179 (1969).

We hold that, absent allegation and proof of tortious conduct existing independent of the breach, see, *e.g., Harbaugh v Citizens Telephone*

*Co,* 190 Mich 421; 157 NW 32 (1916), exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract.[2]

GCR 1963, 111.1, states in part that a complaint, to be sufficient, shall contain

"a statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend."

The cause of action well pleaded and proved by the plaintiff here was that for breach of this commercial contract alone.

We express no opinion on the accuracy of the Court of Appeals observation that Michigan recognizes a tort action for the intentional infliction of mental distress. Suffice it to say we agree with the Court of Appeals that such a cause of action was neither pleaded nor proved by this plaintiff.

The plaintiff asserts that, aside from the tort of intentional infliction of mental distress, his complaint pleaded both a cause of action for breach of contract and a cause of action sounding in tort for either fraud and undue influence or invasion of privacy. As support for this argument, he states:

"Plaintiff submits that all of these torts were involved in this case, but that he was not required to label each in the complaint, the presentation of proofs, or the instructions to the jury and verdict thereupon. It is, instead, sufficient that his complaint placed the defendant on notice that his case sounded partially in tort,

---

[2] We do not address a question not raised: Whether compensation for attorney's fees or other items of pecuniary loss caused by a breach of the insurer's contractual obligation to process claims in good faith might be recoverable if properly pleaded.

and that there is sufficient evidence introduced to support the jury verdict in each instance."

We need not address plaintiff's statement of the law for it cannot fairly be said that his complaint placed defendant on notice that allegations of fraud, undue influence or invasion of privacy were to be defended.

The complaint does contain conclusory language to the effect that the defendant engaged in misrepresentation and deceit in handling the claim, but the facts alleged in the pleadings and established at trial would not support a finding of tortious conduct and merely demonstrate that the nature of the cause of action was for breach of contract, albeit a bad-faith breach.

Plaintiff implies and *amicus curiae* policyholders argue that he has pleaded and this Court should recognize an independent tort based on bad-faith breach of an insurance contract. Plaintiff cites *Harbaugh,* wherein this Court recognized that the same state of facts establishing a breach of contract might also establish a cause of action in tort. *Harbaugh, supra,* 426-427. *Amicus curiae* policyholders direct our attention to *Gruenberg v Aetna Ins Co,* 9 Cal 3d 566; 108 Cal Rptr 480; 510 P2d 1032 (1973), where the California court recognized a cause of action in tort for the insurer's breach of an implied duty of good faith fair dealing and allowed recovery of emotional distress damages.

*Harbaugh* involved a breach of a duty imposed by statute upon the defendant. The duty existed independent of and apart from the contractual undertaking. The instant case, in contrast, parallels more closely the situation in *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956):

"We have simply the violation of a promise to per-

form the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie."

The plaintiff in this case alleged and proved no more than the failure of the defendant to discharge its obligations under the disability insurance contract.

We decline to follow the California court and to declare the mere bad-faith breach of an insurance indemnity contract an independent and separately actionable tort and to thereby open the door to recovery for mental pain and suffering caused by breach of a commercial contract.

Accordingly we affirm the decision of the Court of Appeals reversing the award for mental or emotional distress; we reverse the decision affirming the award of exemplary damages and set such award aside; and we affirm the decision of the Court of Appeals affirming the awards of $16,500 for breach of the disability insurance contract and $798.40 for breach of the companion life insurance policy.

No costs, neither party having prevailed in full.

COLEMAN, C.J., and LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

WILLIAMS, J. (affirming in part and reversing in

*part).* We are called upon to consider whether an award of emotional distress damages is valid in the breach of a disability insurance contract under the *Stewart v Rudner*[1] complement to *Hadley v Baxendale.*[2]

The *Stewart-Hadley* rule requires us to determine whether a disability insurance contract is primarily personal, involving "matters of mental concern and solicitude", *Stewart v Rudner,* 349 Mich 459, 471; 84 NW2d 816 (1957), rather than commercial in nature, and whether emotional distress damage resulting from breach will either arise naturally therefrom or will have been in the parties' contemplation at the time the contract was entered. *Hadley v Baxendale,* 9 Exch 341, 354; 156 Eng Rep 145 (1854).

Both as a matter of logic and persuasive case law, we find a disability insurance contract primarily personal rather than commercial in nature. Furthermore, it is common knowledge that disability insurance is obtained to promote peace of mind and avoid the insecurity and anguish of being disabled and without a paycheck to meet the normal demands of life. Consequently, that failure to provide such contracted-for peace of mind promotes emotional distress requires no argument.

In sum, we hold that suits alleging a contract action for breach of a disability insurance contract properly come within the *Stewart-Hadley* rule allowing the award of resulting emotional distress damages.

Indeed, as former Justice TALBOT SMITH recognized in *Stewart:*

---

[1] 349 Mich 459, 471; 84 NW2d 816 (1957) (Justice TALBOT SMITH writing for three others concurring; the four remaining Justices concurred in result alone but without separate opinion).

[2] 9 Exch 341; 156 Eng Rep 145 (1854).

"[A] *breach* of duty with respect to such contracts *will inevitably and necessarily result in mental anguish,* pain and suffering. In such cases the *parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach.* Far from being outside the contemplation of the parties they are an integral and inseparable part of it."[3] (Emphasis supplied.)

Furthermore, since a disabled insured's emotional distress may be occasioned by a simple, negligent or bad faith breach of the policy, the nature of the breach is as irrelevant to this inquiry as it was in *Stewart* except to the extent that it may contribute to the degree of damage.

Consistent with this ruling, we affirm the Court of Appeals decision that disability insurance contracts are personal agreements involving matters of mental concern and solicitude thereby sanctioning recovery of emotional distress contract damages for simple breach, but reverse the Court of Appeals holding that plaintiff-insured had not sufficiently alleged a contract cause of action for emotional distress damages. We likewise reverse the Court of Appeals decision to uphold the jury's award of exemplary damages inasmuch as they impermissibly overlap with plaintiff's emotional distress recovery in this instance. In all other respects, the Court of Appeals is affirmed.[4]

---

[3] *Stewart, supra,* 471.

[4] In so ruling, we reject defendant's assertion that the Uniform Trade Practices Act, MCL 500.2001 *et seq.;* MSA 24.12001 *et seq.* provides adequate remedy for an insured who has been denied benefits through the act's assessment of 12% interest on late payments. MCL 500.2006(4); MSA 24.12006(4). The payment of interest is intended to compensate for lost use of money rather than mental anguish. Additionally, this Court has deemed interest to be sufficient compensation but has never held it to constitute an exclusive remedy. See *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495, 497; 246 NW 202 (1933).

## I. FACTS

This dispute arose from defendant-insurer's failure to pay benefits pursuant to a disability income policy purchased by plaintiff from defendant on September 15, 1972. On December 2, 1972, plaintiff severely injured his right leg in a motorcycle accident. Plaintiff filed a claim for benefits. Defendant paid benefits for the first two months only after requiring that plaintiff provide extensive documentation as well as the filing of a separate claim for each month's benefits. Simultaneously, defendant allegedly conducted overt and covert investigations to determine the validity of plaintiff's claim. The first two months' benefits were not paid until some time after they were due. When the third month's payment was also late, plaintiff contacted defendant. In a May 2, 1973, phone conversation, an agreement was made whereby defendant would immediately pay three months' benefits in return for plaintiff's agreement to waive benefits for a six-month period, i.e., until October 1, 1973.

In November of 1973, plaintiff again requested claim forms for additional benefits, but never submitted a claim. Policy benefits remained unpaid through November of 1974 when plaintiff filed suit in the Genesee Circuit Court requesting the following relief in his complaint:

"Wherefore, this plaintiff claims damages, such as he may be entitled to under the law of this state, for violation of the various rights of the plaintiff by way of breach of contract, express or implied, misrepresentation and deceit, breach of a fiduciary duty, both express in amount as provided for in the policy and punitive in nature and in such amount to be determined by a jury, demand for which is hereby made by the plaintiff, in

such amount in excess of ten thousand and no/100 ($10,000.00) dollars as may be assessed."

After the trial court ruled that plaintiff's complaint was sufficient without the necessity of amendment to permit the introduction of testimony regarding plaintiff's emotional distress damages claim, the following testimony was elicited from plaintiff on re-direct examination:

"*Q.* Mr. Kewin, I just have a couple more questions and then I'm through. Can you recall whether there was any one conversation which was particularly distressful?

"*A.* I don't remember the exact date, but there was one particular conversation that lasted 20 or 30 minutes where, at the end of that conversation, after I hung up the phone, I broke down to tears. I actually cried. And I haven't done that since I was a kid. I don't remember the last time I done that.

"*Q.* How did you feel after that conversation? What was the effect of that on your emotional system?

"*A.* Well, I was extremely upset, nervous, I didn't know where to go, what to do. They had all my answers, and I had absolutely nothing. I just—

"*Q.* All right. Now, Mr. Kewin, one final question. In the entire proceeding, from the time you got hurt and filed your first claim after that accident of December 2nd, all the way up through the time they finally terminated you, and through the time you signed that May 2nd agreement, can you tell the jury, in your own words, what effect, if any, did all of this conduct that you claim the defendant engaged in, what effect did that have on you personally, * * *?

* * *

"*A.* I was extremely depressed, nervous, irritable, disillusioned, just—I was just a wreck."

After a lengthy trial, the jury was instructed as

follows with respect to plaintiff's emotional distress claim:

"If you do make an award under the policy and if you find the plaintiff did suffer emotional distress as a result of the defendant's knowing, reckless, bad-faith conduct, then you must award a sum adequate to compensate the plaintiff for mental and emotional loss or injury, as you believe he was subjected to the effects caused by the defendant's conduct."

The court also instructed the jury that exemplary damages "are intended only as compensation for the supposed aggravation of an injury to the feelings of another by wanton or reckless acts of a defendant".

On March 29, 1976, the jury returned a verdict for plaintiff awarding: (1) $16,500 in benefits under the disability insurance contract; (2) $75,000 for "mental or emotional distress"; (3) $50,000 for "exemplary" damages; and (4) $798.40 as the agreed cash value of a related life insurance policy. Defendant's motions for judgment notwithstanding the verdict, new trial and *remittitur* were subsequently denied.

On November 21, 1977, the Court of Appeals ruled that emotional distress contract damages could be recovered for the breach of a disability insurance contract since such contracts are concerned with matters of mental concern and solicitude. Because plaintiff had not sufficiently pled such a claim, however, the award of emotional distress damages was reversed. The panel also held that although the emotional distress and exemplary damage awards compensated the same injury to feelings or mental anguish, the exemplary damages were permitted to stand "since there will be no direct recovery for mental anguish damag-

es", *Kewin v Massachusetts Mutual Life Ins Co,* 79 Mich App 639, 657; 263 NW2d 258 (1977). The awards for breach of both the disability insurance contract and companion life insurance policy were affirmed.

On May 8, 1978, we granted leave to appeal limited to the following issues:

"(1) What causes of action and damage remedies are available to an insured who alleges that he has suffered mental anguish as a result of his insurance company's bad faith refusal to honor a valid claim;

"(2) What causes of action and elements of damage were properly pled by the plaintiff?"

## II. THE RULE OF *HADLEY V BAXENDALE*

A. *The General Principle of Hadley*

In *Hadley,* the owner of a mill, which had been shut down because of a broken shaft, contracted with a carrier to transport a shaft to another city where it was to be used as a model in making a replacement. The miller notified the carrier that haste in delivery was essential; the miller did not, however, indicate that operation of the mill was dependent on such prompt delivery.

In a contract action for negligent delay in delivery, the miller claimed damages for lost profits arising from the nonoperation of the mill. On appeal from a verdict for the miller, Baron Alderson held that recovery for those lost profits was impermissible. The carrier could not be expected to anticipate that the mill operations would be suspended by the delay in delivery since no notice of this special circumstance had been given the carrier. The Court enunciated the following rule to be applied in assessing contract damages:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be *such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.* Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus made known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of the injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be unjust to deprive them." *Id.* 354-355.[5] (Emphasis supplied.)

## This rule, which has come to be known as the rule

---

[5] A more recent English case, *Victoria Laundry (Windsor), Ltd v Newman Industries, Ltd,* 2 KB 528, 539; 1 All ER 997 (1949), has succinctly summarized the two principles promulgated in *Hadley* as follows:

"Everyone, as a reasonable person, is taken to know the 'ordinary course of things' and consequently what loss is liable to result from a breach of contract in that ordinary course. This is the subject matter of the 'first rule' in *Hadley v Baxendale.* But to this knowledge, which a contract-breaker is assumed to possess whether he actually possesses it or not, there may have to be added in a particular case knowledge which he actually possesses, of special circumstances outside the 'ordinary course of things,' of such a kind that a breach in those special circumstances would be liable to cause more loss. Such a case attracts the operation of the 'second rule' so as to make additional loss also recoverable."

of *Hadley v Baxendale,* has been almost universally accepted as a correct statement of the principle by which the extent of special damage recovery is to be determined in an action for breach of contract. See *Frederick v Hillebrand,* 199 Mich 333, 341; 165 NW 810 (1917); 1 Restatement Contracts, § 330, p 509.

B. *Imputed Foreseeability or Contemplation*

Simply stated, the first principle of *Hadley* is one of imputed foreseeability or contemplation—that which any reasonable person should have foreseen at the time the contract was forged. The second principle is one of actual foreseeability or contemplation—what the reasonable person with particular knowledge should have foreseen at the time the contract was forged.

Fulfillment of the first principle of the *Hadley* rule is to be assessed by an objective standard. 5 Corbin, Contracts, § 1010, pp 78-79. Thus, the extent of recovery is to be measured, not by what the defendant actually foresaw when the contract was formed, but by what a hypothetical reasonable person in the position of the defendant, with the defendant's knowledge of the circumstances surrounding the transaction, could reasonably have been expected to foresee or should have foreseen, had such defendant considered the matter. The second principle of actual foreseeability or contemplation is not a concern of this case.

### III. THE *HADLEY* RULE AND THE AWARD OF EMOTIONAL DISTRESS CONTRACT DAMAGES

Traditionally, emotional distress has not been considered a proper element of damage in a contract action because of its perceived vagueness and

difficulty of proof. Depending on the nature of the contract, however, contemporary courts have departed from this tradition. Thus, where the contract in dispute has been found primarily personal in nature, involving "matters of mental concern and solicitude", *Stewart, supra,* 471, the award of emotional distress damage has been upheld in accord with the *Hadley* rule. Where, however, the contract has been found primarily commercial in nature, involving matters of "pecuniary aggrandizement", *Stewart, supra,* 471, such an award has been considered violative of *Hadley's* principles. It must be emphasized that mere assignment of the appellative "primarily personal" or "primarily commercial" is no talisman in resolving this inquiry. Rather, whether emotional distress damages may be awarded for breach of contract must be resolved by assessing the nature of the contract in light of the *Hadley* Court's dictates.

A. *Commercial Contracts Preclude the Award of Emotional Distress Contract Damages*

In ordinary commercial transactions which primarily involve matters of "pecuniary aggrandizement", emotion and sentiment are generally deemed to have little place in arms-length bargaining since the dominant contractual purpose is one of promoting a pecuniary interest. As a consequence, recovery of emotional distress damages has been almost uniformly denied in redressing the promisee's loss of the bargain since such damages are generally neither within the parties' contemplation nor do they naturally flow from the breach. See, *e.g.; Jankowski v Mazzotta,* 7 Mich App 483, 486-487; 152 NW2d 49 (1967) (breach of contract to build a house due to substandard handiwork); *Isagholian v Carnegie Institute of Detroit, Inc,* 51 Mich App 220; 214 NW2d 864 (1974)

(breach of employment contract). In accordance with the limitation of *Hadley v Baxendale,* this Court has stated with respect to such instances:

"In such cases breach of contract may cause worry and anxiety varying in degree and kind from contract to contract, depending on the urgencies thereof, the state of mind of the contracting parties, and other elements, but it has long been settled that *recovery therefor was not contemplated by the parties as the 'natural and probable' result of the breach. Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145; *Clark v Moore,* 3 Mich 55 [1853]; *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495; 246 NW 202; 86 ALR 633 [1933]; *Frederick v Hillebrand,* 199 Mich 333; 165 NW 810." *Stewart, supra,* 469. (Emphasis added.)

In essence, an award of emotional distress damages for breach of commercial contract has been judicially considered to far exceed the injured promisee's expectation interest; consequently, such an award would impermissibly afford that party more than the benefit of the bargain. But see *F Becker Asphaltum Roofing Co v Murphy,* 224 Ala 655; 141 So 630 (1932) (breach of warranty of roofing materials which leaked); *Westesen v Olathe State Bank,* 78 Colo 217; 240 P 689 (1925) (breach of contract by bank to honor draft drawn by plaintiff traveling away from home).

B. *Primarily Personal Contracts Allow the Award of Emotional Distress Contract Damages*

Where the central interest infringed by the breach is primarily *personal* rather than pecuniary in nature, however, jurists and scholars[6] have

___

[6] See, generally, Note, *Damages Assessed Against Insurer for Wrongful Failure to Pay,* 10 Wm & Mary L Rev 466, 467 (1968); Note, *Damages for Mental Suffering Caused by Insurers: Recent Developments in the Law of Tort and Contract,* 48 Notre Dame Lawyer 1303 (1973); Note, *The New Tort of Bad Faith Breach of Contract: Chris-*

been more hesitant to find emotional distress damages to be violative of the *Hadley* rule. In such instances, it should have been evident to the defaulting promisor at the time of contract formation that breach would likely occasion mental distress for reasons that do not stem from the pecuniary loss alone. This principle was succinctly stated by TALBOT SMITH, J., in *Stewart, supra,* 471-472, quoting *Lamm v Shingleton,* 231 NC 10, 14-15; 55 SE2d 810, 813 (1949):

" 'Where the contract is personal in nature and the

*tian v American Home Assurance Corp* [577 P2d 899 (Okla, 1977)], 13 Tulsa L J 605 (1978); Note, *The Widening Scope of Insurer's Liability,* 63 Ky L J 145 (1975). See 1 Restatement Contracts, § 341, p 559, which provides:

"In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss."

For an elaboration of this section, Mr. Justice Musmanno's concurrence in *Gefter v Rosenthal,* 384 Pa 123; 119 A2d 250 (1956), is insightful. See also *Jankowski v Mazzotta,* 7 Mich App 483; 152 NW2d 49 (1967).

The Restatement's position on the award of emotional distress damages has been tentatively revised to provide as follows:

"Recovery for emotional disturbance shall be excluded unless the breach has also caused bodily harm or the contract or breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement Contracts, 2d (Tentative Draft No 14, 1979), § 367, pp 100-101.

The comment to this section indicates a trend away from the original Restatement's focus on the nature of the breach and toward an emphasis on *Hadley's* teachings:

"In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. *Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.*" (Emphasis supplied.)

contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered. 15 Am Jur, Damages, § 182, p 600; McCormick on Damages, p 592; *Warner v Benham,* 126 Wash 393; 218 P 260; 34 ALR 1358 [1923]. In such case the party sought to be charged is presumed to have contracted with reference to the payment of damages of that character in the event such damages should accrue on account of his breach of the contract. *Renihan v Wright,* 125 Ind 536; 25 NE 822; 9 LRA 514 [1890]; McCormick on Damages, p 595.' "

Illustrative of such "personal" contracts are contracts to marry,[7] contracts between carriers and passengers,[8] contracts of innkeepers and guests,[9] contracts for the disposition of dead bodies,[10] contracts for the delivery of death messages,[11] contracts for public entertainment or amusement,[12] and contracts to provide care, room and board.[13] As stated by Arthur Linton Corbin, an element common to all of these contract damages actions is that they involve situations in which "personal feelings are most deeply involved and in which mental suffering is likely to be most poignant",[14]

---

[7] *Vanderpool v Richardson,* 52 Mich 336; 17 NW 936 (1883).

[8] *Humphrey v Michigan United R Co,* 166 Mich 645; 132 NW 447 (1911).

[9] *Frewen v Page,* 238 Mass 499; 131 NE 475; 17 ALR 134 (1921).

[10] *Fitzsimmons v Olinger Mortuary Ass'n,* 91 Colo 544; 17 P2d 535 (1932).

[11] *Wadsworth v Western Union Telegraph Co,* 86 Tenn 695; 8 SW 574 (1888).

[12] *Aaron v Ward,* 203 NY 351; 96 NE 736 (1911).

[13] *Avery v Arnold Home, Inc,* 17 Mich App 240; 169 NW2d 135 (1969).

[14] 5 Corbin, Contracts, § 1076, p 429.

despite their literal commercial nature.

## C. *Hadley's Complement: Stewart v Rudner*

The propriety of an award of emotional distress damages in certain contract actions was given this Court's imprimatur in the seminal case of *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957) (Justice TALBOT SMITH writing for three others concurring; the four remaining Justices concurred in result alone but without separate opinion). In upholding a jury award of emotional distress contract damages for a doctor's breach in failing to perform a Caesarean section, Justice SMITH surveyed the historical application of *Hadley* in both commercial and personal contractual transactions, and concluded:

"[N]ot all contracts are purely commercial in their nature. Some involve rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal. In such cases the award of damages for mental distress and suffering is a commonplace, even in actions *ex contractu." Stewart, supra,* 469.

" '*While it is true that if the breach causes no actual injury beyond vexation and annoyance, as all breaches of contract do more or less, they are not subjects of compensation, unless to the extent that the contract was made specially to procure exemption from them. To that extent, that is, where a contract is made to secure relief from a particular inconvenience or annoyance, or to confer a particular enjoyment, the breach, so far as it disappoints in respect of that purpose, may give a right to damages appropriate to the objects of the contract.'*

\*  \*  \*

"The cases to which reference was just made [contracts to marry, of passage, of innkeeper and guest, and for burial] involve a clear exception to the 'rule' (if there now is any such) that damages for mental suffering are not recoverable in contract actions. They are. When we have a contract concerned not with trade and

commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. *In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."* Stewart, supra, 470-471, quoting 1 Sutherland on Damages (1882 ed), pp 157-158. (Emphasis supplied.)

## D. *The Stewart-Hadley Doctrine*

In accordance with the *Stewart* complement to *Hadley,* three elements must be proven to establish a basis for the award of emotional distress damages in a contract cause of action:

"The clear consensus of the pure contract cases is that a plaintiff must establish three things: (1) that the contract involves matters of mental concern and solicitude *[i.e.,* that emotional distress in the event of breach was foreseeable]; (2) that the contract has been breached; and (3) that the breach has caused mental anguish." *Kewin v Massachusetts Mutual Life Ins Co,* 79 Mich App 639, 650; 263 NW2d 258 (1977).

The first element of the *Stewart-Hadley* doctrine is perhaps the most difficult to articulate. The problem is, whether given the obvious interdependence of the nature of the contract and the foreseeability of damages in the event of its breach, the criterion to be used should be the nature of the contract or the foreseeability of the damages, or possibly both. As previously indicated in this section, for years the judiciary has developed a shorthand approach to the award of *Hadley*-type damages by looking to the nature of the contract

and labelling it either primarily "personal" or "commercial". If the former, emotional distress recovery was generally permitted; if the latter, such recovery was normally precluded.

Although this labelling device may have historically proven both useful and helpful, it may nevertheless have obfuscated the judiciary's fundamental problem of analysis. For instance, it may have provided the courts with an opportunity to merely label a contract as primarily "personal" in order to allow emotional distress damages or "commercial" in order to deny such damages. Such a shorthand analysis could work very well in the obvious cases but might lead to arbitrary decision in such cases as this, whether a disability insurance contract was commercial or personal, since it obviously has characteristics of both. Yet, once *Hadley's* fundamental analysis of foreseeability is applied, it becomes clear whether special damages should or should not be awarded in the case of such contracts.[15]

Rather than indulging in the telescoped mode of labelling analysis, we are of the opinion that the critical and preferable inquiry is whether the claimed damage is foreseeable. We would recognize, of course, that once this fundamental analysis has been made in a class of cases, the shorthand criterion could well be used in similar cases, leaving the fundamental analysis for those cases where new ground must be broken.

We conclude that the essential inquiry to be made, therefore, is (i) whether the asserted emotional distress damages naturally arose from the breach, or (ii) whether at the time of contract

---

[15] Even in *Hadley*, the Court implied that, had the miller informed the carrier of the special circumstances under which the contract was made, special damages would likely have been awarded.

formation a hypothetical reasonable person in the position of the defaulting disability insurer, with the insurer's knowledge of the circumstances surrounding the disability insurance transaction, could reasonably have been expected to foresee or should have foreseen the disabled insured's emotional distress necessarily or reasonably resulting from the insurer's breach, had such insurer considered the matter. If either inquiry is resolved in the affirmative, the Court must conclude that the parties had contracted to compensate the insured for such "usual" emotional distress damages since they were within the defaulting insurer's contemplation at the time of contract formation or naturally arose from the breach. The denomination of a contract as involving "matters of mental concern and solicitude" or matters of "pecuniary aggrandizement" does not impart talismanic value; rather, such conclusion must result from considered application of *Hadley's* principles.

Second, having determined that the insured's emotional distress claim does not transgress the *Hadley* limitation, it need only be shown that the contract has been breached. It is significant that the nature of the breach is not a factor in the *Stewart* analysis. As in all contract actions, the disappointed promisee need only prove that a breach has occurred, whether simple, innocent, aggravated, outrageous, or otherwise.

Third, if it has been proven that the contract is primarily personal in nature, again as framed by the *Hadley* analysis, and that a breach occurred, the insured need only prove that the breach has in fact caused the alleged emotional distress which may be proven with reasonable certainty. While the degree of breach may, under the facts, exacerbate the degree of distress alleged, no more than a

simple breach is required to establish a prima facie action for distress damages.

If each of these three elements has been proven, an award of emotional distress damages may be permitted to fulfill the insured's disappointed expectation interest without simultaneously imposing an undue burden on the defaulting insurer. *Hadley's* aim of risk allocation will have been effectuated and the promisee will have been afforded the benefit of the bargain.

## IV. Disability Insurance Contracts are Personal Contracts Involving Matters of Mental Concern and Solicitude

### A. *Case Law*

There can be no cavil with our conclusion that disability insurance contracts are primarily personal contracts involving matters of mental concern and solicitude. Given the very nature of such contracts, the likelihood of emotional distress resulting from a breach must have been either within the contemplation of the promisor at the time of contract formation or the natural result of breach. *Stewart* seemingly anticipated this conclusion with respect to disability insurance contracts when it enunciated the following:

" 'While it is true that if the breach causes no actual injury beyond vexation and annoyance, as all breaches of contract do more or less, they are not subjects of compensation, *unless* to the extent that the contract was *specially made to procure exemption from them. To that extent, that is, where a contract is made to secure relief from a particular inconvenience or annoyance, or to confer a particular enjoyment, the breach, so far as it disappoints in respect of that purpose, may give a right to damages* appropriate to the objects of the contract.' "

*Stewart, supra,* 470-471, quoting 1 Sutherland on Damages (1882 ed), pp 157-158. (Emphasis supplied.)

Our finding is likewise supported by analogous authority from this and other jurisdictions in which the propriety of awarding emotional distress under an insurance contract has been sanctioned.

In *Crisci v Security Ins Co of New Haven, Connecticut,* 66 Cal 2d 425, 434; 58 Cal Rptr 13; 426 P2d 173 (1967), the California Supreme Court unanimously upheld an award of emotional distress damages for breach of a liability insurance contract sounding in both contract and tort:

> "[P]laintiff did not seek by the contract involved here to obtain a commercial advantage but to *protect herself against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss,* and recovery of damages for mental suffering has been permitted for breach of contracts which directly concern the comfort, happiness or personal esteem of one of the parties. *(Chelini v Nieri,* 32 Cal 2d 480, 482; 196 P2d 915 [1948].)"[16] (Emphasis supplied.)

Likewise, in *Fletcher v Western National Life*

[16] See *Westervelt v McCullough,* 68 Cal App 198; 228 P 734 (1924). In *Westervelt,* the defaulting promisor breached its contract to provide a home and personal care for the aging promisee. The California court held that damages for emotional distress may be recovered for contract breach on the ground that certain "special" contracts contemplate that emotional distress damages will naturally arise from the breach. Here, the "comfort, happiness, or personal welfare" of the disappointed promisee was within the promisor's initial contemplation. The court continued: "Whenever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject matter of which is such as directly to affect or move the affection, self-esteem or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach." *Id.,* 208-209.

*Ins Co,* 10 Cal App 3d 376, 404; 89 Cal Rptr 78 (1970), the above statement from *Crisci* was quoted with approval in the context of a disability insurance contract. The *Fletcher* court elaborated:

"*These considerations [the insured's peace of mind and security] are particularly cogent in disability insurance.* The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity." (Emphasis supplied.)

The Federal Seventh Circuit in *Eckenrode v Life of America Ins Co,* 470 F2d 1, 5 (CA 7, 1972), extended this line of reasoning in the context of an insurer's refusal to tender life insurance proceeds:

"[I]t *is common knowledge that one of the most frequent considerations in procuring life insurance is to ensure the continued economic and mental welfare of the beneficiaries upon the death of the insured.* See *Crisci,* 66 Cal 2d 425, [434.] The very risks insured against presuppose that upon the death of the insured the beneficiary might be in difficult circumstances and thus particularly susceptible and vulnerable to high pressure tactics by an economically powerful entity. *Fletcher,* [10 Cal App 3d 376, 404.] In the case before us Insurer's alleged high pressure methods (economic coercion) were aimed at the very thing insured against, and we think that *the insurance company was on notice that plaintiff would be particularly vulnerable to mental distress by reason of her financial plight.*" (Emphasis supplied.)[17]

---

[17] In reversing the district court's dismissal of plaintiff's claim for emotional distress damages, the Federal Seventh Circuit indicated that "an action of the type involved here sounds both in contract and in tort". *Eckenrode, supra,* 5, fn 4. Foreseeability of emotional distress gauged by contract principles was apparently not seen as problematic since the court felt that, by the very nature of the risks insured against, a reasonable insurer should have contemplated that an injured beneficiary would be susceptible to such distress.

Although this Court has not until today passed on the question whether a disability insurance agreement is primarily personal or commercial in nature, our decision in *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495; 246 NW 202 (1933), recommends our conclusion that such contracts may properly be characterized as involving matters of mental concern and solicitude. In *Miholevich,* an insurer breached its automobile collision insurance policy by failing to satisfy a judgment rendered against the plaintiff-insured. Plaintiff instituted a contract cause of action claiming damages for the insured's resulting arrest and incarceration. In upholding a judgment for the insured's injuries to feelings, *i.e.,* "shame and mortification", this Court unanimously stated:

"The damages claimed by plaintiff are for a breach of defendant's contract to pay the judgment. In *Frederick v Hillebrand,* 199 Mich 333, 341, in which damages were claimed for a breach of contract, it was said:

" 'The damage which a party ought to receive in respect to such breach of contract may be said to be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach of it.'

"The rule thus stated is in accord with that laid down in the English case of *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145; 23 LJ Exch 179; 18 Jur 358; 5 Eng Rul Cas 502, and has been followed quite generally by all the courts in this country. (See citations in footnote in 8 RCL, pp 455 *et seq.)* Let us apply it to the facts in this case. The plaintiff was a man without means. He owned an automobile, and was aware of the fact that a judgment might at some time be recovered against him for his negligence in driving it. It must be presumed that he knew that, if he did not pay such judgment, a

body execution might issue against him. To protect himself from this liability he sought and secured the policy in question. The defendant must also be presumed to have known that, in case of plaintiff's default in payment, his arrest might follow. Must it not then be reasonably supposed that the liability to arrest to which plaintiff was exposed was in the contemplation of these parties at the time the contract was entered into? While there are many cases in which this rule of law has been so applied, we find none involving the question here presented.

"The wilful neglect of the defendant to pay the judgment was not due to an oversight on its part. It resulted in the imprisonment of plaintiff, with the shame and mortification as well as loss of time incident thereto. A reasonable interpretation of the contract and the application of the law thereto justified the award of damages by the trial court. No claim is made that it is excessive." 261 Mich 498-499.[18]

Furthermore, various panels of our Court of Appeals have concluded that insurance contracts involve "matters of mental concern and solicitude".

In *McCune v Grimaldi Buick-Opel, Inc,* 45 Mich App 472; 206 NW2d 742 (1973), plaintiff brought a contract action against his employer for failure to make timely premium payments on plaintiff's health insurance. As a result of this breach, plaintiff's coverage was terminated while his wife was hospitalized. The parties stipulated that plaintiff incurred damages for harassment and humiliation in the amount of $29,333.33. Reversing the trial court's ruling of no cause of action for defendant,

---

[18] The fact that the *Miholevich* Court permitted the award of such damages for breach of a liability rather than an indemnity insurance contract is a distinction without a difference. In both instances, such damages may be awarded only where it has been found that emotional distress arises naturally from or reasonably can be said to have been in the contemplation of the parties at the time the contract was formed.

LEVIN, P.J., with V. J. BRENNAN and VAN VALKEN-
BURG, JJ., upheld plaintiff's claim of damages for
"mental anguish, humiliation, embarrassment,
and harassment by medical creditors which occur-
red as a result of defendant's breach of contract"
to pay health insurance premiums. Beyond the
parties' stipulation to such damages, the panel
squarely rested its holding on the "mental concern
and solicitude" principle enunciated in *Stewart*,
stating:

"We hold that this case is the type of contract case in
which damages for mental anguish may be recovered. It
does not deal with trade and commerce, but with hospi-
tal and medical insurance, the provision of which is
certainly a matter of 'mental concern and solicitude' on
the part of most family heads." *McCune, supra*, 478.

In *Palmer v Pacific Indemnity Co*, 74 Mich App
259; 254 NW2d 52 (1977), it had been determined
at trial that defendant-professional malpractice
insurer had breached the contract's duty-to-defend
clause by failing to appeal a malpractice judgment
against the plaintiff-insured which exceeded the
policy's limits. The trial court refused to allow the
jury to consider the insured's claim for emotional
distress damages arising from defendant's contract
breach. The Court of Appeals ruled that emotional
distress damages may be recovered in a contract
action for breach of a malpractice insurance con-
tract. In reversing the lower court's ruling and
remanding the issue of emotional distress damages
for the jury's consideration, the panel, again rely-
ing on *Stewart*, stated:

"The mental anguish associated with the case at bar
is not as extreme as that in *Miholevich v Mid-West
Mutual Auto Ins Co*, 261 Mich 495; 246 NW 202 (1933),
but is similar. In *Frishett v State Farm Mutual Auto-*

*mobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966), this Court held that the insurance company was liable for damages associated due to mental anguish for among other things, unjustly withholding benefits. Damages for mental suffering were allowed in *McCune v Grimaldi Buick-Opel, Inc,* 45 Mich App 472; 206 NW2d 742 (1973), where an employee sued his employer for the employer's failure to maintain a health and medical insurance policy. Such insurance was characterized as a 'matter of "mental concern and solicitude" '. *Id.,* p 478. *In the case at bar, the mental distress of failing to appeal a severe malpractice judgment considerably in excess of the policy limits would be considered foreseeable and would be a proper matter for the jury to consider." 74 Mich App 266.[19] (Emphasis supplied.)

Although Judge CAMPBELL did not directly characterize the professional malpractice policy as one involving matters of mental concern and solicitude, it is clear from that panel's reliance on *Stewart* and *McCune* that such denomination was implicit.

Likewise, in *Seaton v State Farm Life Ins Co,* 75 Mich App 252; 254 NW2d 858 (1977), the panel ruled that the lower court should have instructed

---

[19] The Court of Appeals below correctly recognized that, strictly speaking, the *Palmer* panel's citation to *Frishett* was not exact since *Frishett* was a tort case addressing the propriety of an emotional distress award arising from the intentional infliction of emotional distress, while *Miholevich, McCune, Stewart,* and *Palmer* were each concerned with the award of such damages arising from breach of contract. *Kewin, supra,* 656. See also *Krajenke v Preferred Mutual Ins Co,* 68 Mich App 211; 242 NW2d 70 (1976) (exemplary damages awarded for breach of "personal" insurance contract). We mention this subtle distinction not to criticize the *Palmer* panel but to emphasize that we are today recognizing an action *ex contractu* for emotional distress damage. In fact, we can appreciate the *Palmer* panel's reference to *Frishett* inasmuch as this jurisdiction has increasingly blurred the division between tort and contract in products liability actions and has expanded the breadth of emotional distress recovery in other suits. Indeed, this parallel development in the emotional distress area of concern persuades us of the correctness of our holding herein without the necessity of relying on tort cases for precedent.

the jury on mental anguish damages in an action occasioned by a life insurer's refusal to pay benefits on the death of plaintiff's husband:

"We believe such an instruction proper where the suit involves a personal life insurance contract which entails matters of mental concern and solicitude. *Palmer v Pacific Indemnity Co,* 74 Mich App 259; 254 NW2d 52 (1977); *McCune v Grimaldi Buick-Opel, Inc,* 45 Mich App 472, 478; 206 NW2d 742 (1973)." 75 Mich App 260.

The thrust and import of the above Michigan cases were accurately summarized by the Court of Appeals panel below as follows:

"The majority of the cases have dealt with awarding damages for mental anguish in breach of contract actions based on insurance policies. These cases all trace their roots to Justice SMITH's opinion in *Stewart v Rudner, supra,* where he stated that such damages were awardable for a breach of contract where the contract involved 'matters of mental concern and solicitude'. The contract involved in *Stewart* was unique. At that time, it is doubtful that any type of insurance contract would have qualified for the exception discussed by Justice SMITH. One of the remarkable things about the recent decisions of this Court has been the ease with which a variety of insurance policies have been accepted as contracts involving mental concern and solicitude. That phrase now encompasses health insurance *(McCune v Grimaldi Buick, supra),* fire and casualty insurance *(Krajenke v Preferred Mutual Ins Co,* [68 Mich App 211; 242 NW2d 70 (1976)], professional malpractice insurance *(Palmer v Pacific Indemnity Ins Co, supra),* and life insurance *(Seaton v State Farm Life Ins Co, supra).* No Michigan court has considered whether disability insurance should be placed in the same classification. * * * Given the clear consensus of this Court established by those four decisions, we must * * * hold that disability insurance contracts are also concerned

with matters of mental concern and solicitude." *Kewin, supra,* 648-649.[20]

## B. *Analysis*

### 1. *Plaintiff's Disability Insurance Contract Involved Matters of Mental Concern and Solicitude: Emotional Distress Damage Was Within the Parties' Contemplation at the Time of Contract Formation*

We, too, find that disability insurance contracts are primarily personal in nature[21] and that simple

---

[20] But see, *Riggs v Fremont Mutual Ins Co,* 85 Mich App 203; 270 NW2d 654 (1978) (exemplary damages not recoverable for breach of fire insurance policy); *Fletcher v Aetna Casualty & Surety Co,* 80 Mich App 439; 264 NW2d 19 (1978) (exemplary damages not recoverable for breach of uninsured motorist coverage). In *Bolden v John Hancock Mutual Life Ins Co,* 422 F Supp 28 (ED Mich, 1976), it was held that disability insurance contracts do not qualify for the *Stewart* complement to *Hadley.* Beyond the fact that we are not bound to follow this state's lower Federal courts in their interpretation of our decisions, it is significant that *Bolden* was decided without the benefit of *Palmer, supra* (1977), or *Seaton, supra* (1977).

Equally inapposite is our Brother KAVANAGH's citation to the 1953 Sixth Circuit case of *Scottish Union & National Ins Co v Bejcy,* 201 F2d 163, 166 (CA 6, 1953), for the general proposition urged by Corbin that emotional distress damages may not be awarded for breach of an insurance contract because it would seem "far-fetched to say that the insurer has promised to pay the loss and has also promised to pay the loss caused by his failure to pay the loss", 5 Corbin, Contracts, § 1010, pp 80-81. Not only was this Federal opinion rendered without the benefit of *McCune, supra, Palmer, supra,* or *Seaton, supra,* but it was also issued four years prior to Justice SMITH's pronouncement in *Stewart.* Indeed, had the Sixth Circuit ruled differently in 1953, it is likely that its decision would have violated the doctrine of *Erie R Co v Tompkins,* 304 US 64; 58 S Ct 817; 82 L Ed 1188 (1938).

[21] We must respectfully disagree with our Brother KAVANAGH's citation to *Secor v Pioneer Foundry Co,* 20 Mich App 30, 35; 173 NW2d 780 (1969), for the proposition that "Such [insurance contracts for disability income protection] are commercial in nature; they are agreements to pay a sum of money upon the occurrence of a specified event, *Secor* * * *". The issue presented in *Secor* was whether an employer maintains an insurable interest in an employee's key-man life insurance policy after the employee has terminated employment. Not only was *Secor* restricted to a consideration of life, not disability, insurance matters, but, additionally, no claim was made for and the Court of Appeals did not address the issue of emotional distress recovery for breach of such life insurance contract. The plaintiff's

breach of such contracts will give rise to a contract cause of action for emotional distress damages. Our decision, it should be emphasized, does not hinge on a mere assignment of the term "primarily commercial" or "primarily personal" contract. To so proceed would obviously exalt form over substance. Rather, our characterization of plaintiff's disability contract as primarily personal merely provides a shorthand means to express our finding that disability insurance contracts are of such a nature that emotional distress may naturally arise from their breach or may have been within the contemplation of a reasonable disability insurer at the time such contract was forged.

Admittedly, disability contracts, much like other insurance contracts, involve a pecuniary element inasmuch as they are agreements to pay a sum of money upon the occurrence of a specified event. It is also true, however, that such contracts have as their central purpose certain highly personal ends, including: the elimination or minimization of financial hardship when a disability occurs, the protection of material security from the harsh consequences of disability, and the provision of emotional security through the insured's anticipation that he or she will be insulated from such financial disaster as well as the peace of mind the policy will provide when paid in the event of disability. Also, as in most insurance situations, it is elemental that an insured is basically contracting for both financial and emotional security in the event of loss. The primacy of emotional secu-

reference to personal as well as financial loss suffered by family members on the insured's death was presumably only offered to persuade the panel, on policy grounds, that key-man life insurance policies should be treated differently from other life insurance policies where the issue of insurable interest is in dispute. No claim for emotional distress damages having been made, this case is inapposite to the question before this Court.

rity is especially striking in the case of disability insurance contracts since the "very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable * * *". *Fletcher, supra,* 404. "[P]laintiff did not seek by the contract involved here to obtain a commercial advantage but to protect herself against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss * * *". *Crisci, supra,* 434. Indeed, as implicitly recognized by the *Stewart* Court, a disability insurance contract is one "made to secure relief from a particular inconvenience or annoyance, or to confer a particular enjoyment" the breach of which, "so far as it disappoints in respect of that purpose, may give a right to damages appropriate to the objects of the contract" including those to remedy the insured's resultant emotional distress. *Stewart, supra,* 470-471. To paraphrase *Stewart,* a disability insurance contract is not primarily concerned with trade and commerce but with the peace of mind and security it will provide in the event of disability, not with profit but with the protection of policyholders against strait financial circumstances, not with pecuniary aggrandizement but with exemption from the inconvenience and annoyance of curtailed income.

The allowance of emotional distress damage will work no hardship on the insurer since, by the very nature of the risks insured against, a disability insurer must be presumed to have contemplated that emotional distress would accrue as a conse-

quence of breach. Stated in terms of *Hadley's* objective standard, at the time of contract formation a hypothetical reasonable person in the position of the defaulting disability insurer, with the insurer's knowledge of the circumstances surrounding the disability insurance transaction, could reasonably have been expected to foresee or should have foreseen the disabled insured's emotional distress necessarily or reasonably resulting from the insurer's breach, had the insurer directed its attention to consideration of the matter. Again quoting *Stewart, supra,* 471:

> "In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in [the] event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."

In arriving at our conclusion that the payment of such damages must have been contemplated by the insurer, we are reminded of the following passage from Corbin:

> "It is not required that the defendant should have so expressed himself, either in making an offer or in accepting the plaintiff's offer, as to lead the plaintiff reasonably to believe that he was contracting to make such recompense or to assume the risk of some particular kind or amount of injury in case of breach. * * * It is not necessary that the parties should have given the matter a moment's thought or should have expressed themselves on the subject. If there are special circumstances, it is not even necessary that the defendant should have known them; it is enough that a reasonable man in his position would have known them. * * * His risk is one that is determined by the courts; and it is not dependent upon an expression of his assent regarding it." 5 Corbin, Contracts, § 1010, p 79.

We conclude from our assessment of the risks insured against by disability contracts that the insurer contemplated liability for emotional distress damage in the event of non-payment. This holding is merely a logical consequence of this Court's ruling in *Miholevich, supra,* and *Stewart* as well as the Court of Appeals rulings in *McCune, supra, Palmer, supra,* and *Seaton, supra.*

2. *Plaintiff's Disability Contract Had Been Breached by the Insured's Failure to Pay Disability Benefits*

There is no dispute that the insurer breached its contract by failing to tender disability benefits. Consistent with the lower court's instruction, moreover, the jury must have found that plaintiff had suffered such distress "as a result of the defendant's knowing, reckless, bad-faith conduct". The trial court's instruction was more stringent than necessary since we are of the opinion that proof of *any* nature of breach will be sufficient to support a claim of emotional distress damage.

It is hornbook law "that when a promisor fails in any respect to carry out an existing duty calling for a present, immediate performance under a contract, he is guilty of a breach of contract which furnishes a basis for a cause of action of some sort". Murray on Contracts (2d rev ed, Indianapolis: Bobbs-Merrill, 1974), § 206, p 417. There is no necessity for requiring more culpable conduct in insurance contract breaches than that required for breach of other contracts. *Stewart* recognized this principle *sub silentio* in requiring only a simple, innocent breach to support an emotional distress award. See *McCune, supra* (simple failure to remit premium payments); *Palmer, supra* (simple failure to defend); *Seaton, supra* (simple failure to remit life insurance proceeds). While some jurisdictions

have required a showing of bad faith to support an award of distress damages for breach of contract,[22] we do not feel compelled to adopt such a qualification since we rest our decision entirely on contract principles. Emotional distress may be legitimately occasioned whether the breach is simple, negligent, aggravated, or otherwise. To deny recovery for contemplated emotional distress due to breach of a primarily personal contract because the defaulting promisor did not act in bad faith would directly contravene time-honored notions of contract law and frustrate the very goal of *Stewart* and its progeny.[23] Even a simple refusal to pay is a denial of an insured's basis of the bargain, *i.e.,* the insured's peace of mind that provision has been made for the unsettling exigencies of disability. What injures the policyholder is not the insurer's intention to harm but, rather, the insurer's failure

---

[22] See generally fn 6, *supra.*

[23] A collateral reason for holding an insurer liable for such damages in the event of simple breach stems in part from the special relationship thrust on the insurer and the insured. It is clear that the insurance industry both has an expansive and a very intimate impact on our society. Vance, Handbook of the Law of Insurance (2d ed), § 13, fn 53. An insured has virtually no bargaining power concerning the terms of a policy and consequently no method of guaranteeing that the insurer will adequately protect the insured. *Christian v American Home Assurance Co,* 577 P2d 899, 902 (Okla, 1977). Indeed, as early as 1914, the United States Supreme Court recognized the monopolistic nature of the insurance industry and the strikingly unequal bargaining power between an insurer and an insured. *German Alliance Ins Co v Lewis,* 233 US 389; 34 S Ct 612; 58 L Ed 1011 (1914).

This potential for overreaching is aggravated when the contingency for which the policy was purchased occurs. The California Court of Appeal in *Fletcher, supra,* has aptly stated in this regard:

"These considerations are particularly cogent in disability insurance. The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity." *Fletcher, supra,* 404.

Furthermore, in the event that the insured submits a claim, the insurer will be well aware of the insured's highly susceptible condition and the opportunity to exploit it. Great power must entail great responsibility. Such responsibility must be akin to a fiduciary duty.

to tender benefits determined to be due and the resulting emotional distress.

### 3. *Breach of the Disability Insurance Contract Caused Plaintiff's Emotional Distress*

In considering the court's instruction regarding whether plaintiff's emotional distress was the result of defendant's "knowing, reckless, bad faith conduct", the jury had the following evidence of misconduct. The insurer was accused of continuing its surreptitious investigation of Mr. Kewin after medical reports had firmly established the serious nature of Mr. Kewin's injury. The insurer also allegedly concealed a significant medical report from Mr. Kewin while negotiating a settlement of Mr. Kewin's claim on May 2, 1973. Further, the insurer reportedly disputed Mr. Kewin's claim on the untenable ground that he was unemployed at the time of the accident, although a company attorney had advised that such allegation was without foundation. Finally, the insurer repeatedly failed to make timely payment of Mr. Kewin's benefits despite the fact that it should have been well aware of his disability and the emotional and financial difficulties which this entailed. The following testimony by Mr. Kewin as to his emotional distress was quoted in the facts, *supra,* ending:

"*Q.* * * * [W]hat effect, if any, did all of this conduct that you claim the defendant engaged in, what effect did that have on you personally, * * *?

\* \* \*

"*A.* I was extremely depressed, nervous, irritable, disillusioned, just—I was just a wreck."

We are not here as triers of fact to second-guess the jury's award of damages or its appraisal of adequate compensation. As a general rule, such

appraisal is solely left for the jury's determination. *McDuffie v Root,* 300 Mich 286, 299-300; 1 NW2d 544 (1942). The fact that the jury was asked to assess "emotional distress" rather than another, perhaps more tangible, damage is of no import since this jurisdiction has increasingly recognized the propriety of such assessment in tort actions. See, *e.g., Daley v LaCroix,* 384 Mich 4; 179 NW2d 390 (1970); *Toms v McConnell,* 45 Mich App 647; 207 NW2d 140 (1973); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966); Prosser, Law of Torts (4th ed), § 54, pp 327-328.

4. *The Jury's Award of Emotional Distress Damages Must Be Upheld*

Based on our finding that disability insurance contracts involve matters of mental concern and solicitude, the breach of which will support an award of emotional distress damages if adequately proven, we hold that the jury's award in this matter must be upheld. This ruling is consistent with both the *Stewart* and *Hadley* doctrines. It also furthers the aim of risk allocation in the instance of disability insurance contracts by fulfilling the promisee's disappointed expectation interest without imposing an undue financial burden on the defaulting promisor.

V. PLAINTIFF'S PLEADINGS WERE SUFFICIENT TO
ALLEGE A CLAIM OF EMOTIONAL DISTRESS ARISING
FROM DEFENDANT'S BREACH OF CONTRACT

Having ruled that emotional distress damages may be recovered for breach of a disability insurance contract, the question remains whether plaintiff has sufficiently pled such a claim. There is no dispute that plaintiff sufficiently pled a contract

cause of action; rather, the dispute involves whether plaintiff sufficiently pled a claim for emotional distress damages resulting from that breach. Contrary to the Court of Appeals determination, we hold that plaintiff made sufficient allegation to support a recovery of mental distress damages arising from breach of contract.

"[T]he function of the pleadings is to act as a guide rope, not as a snare or a hangman's noose." *Olson v Dahlen,* 3 Mich App 63, 72; 141 NW2d 702 (1966). The General Court Rules of 1963 were drafted to substitute notice or fact pleading for rigid forms of action. See GCR 1963, 111, Committee Note (2) ("This requirement is liberalized to the extent that no pleading shall be deemed insufficient if it reasonably informs the adverse party of the nature of the cause he is called upon to defend"), 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 191. Thus, Rule 111.1 provides that complaints must contain the following:

"(1) a statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend; * * *."

In those instances where special damages are claimed, GCR 1963, 112.8 provides that "they shall be specifically stated". The Committee Notes indicate that this subrule on special damages was drafted in accordance with the following statement from *McDuffie v Root,* 300 Mich 286, 293-294; 1 NW2d 544 (1942):

"In some jurisdictions it is held that an injury must be specifically alleged, or must be the natural and

*necessary* result of injury complained of in the pleadings, to justify the admission of evidence of such injury. Such is not the Michigan law. In this State, it is merely required that the injury sought to be proved must be the *natural* result of the injury complained of in the pleadings. *If such injury can be traced to the act complained of, and is such as would naturally follow from the alleged injury, it need not be specifically averred. Groat v Detroit United Railway,* 153 Mich 165 [116 NW 1081 (1908)]." (Emphasis changed.)

Thus, while both the subrule on complaints and the subrule on special damages literally require "specific" averments, it is apparent that the pleading need only reasonably inform the adverse party of the alleged injury from which the cause of action naturally flows.

Plaintiff's complaint set forth the nature of the disability policy and the circumstances under which his claim for policy benefits arose. The complaint alleged in part: that defendant had exhibited a "negative, skeptical, and defensive attitude toward his claim"; that defendant's investigative measures "violated the spirit and intent of the policy and the spirit and intent of the representations" made to plaintiff by defendant's agent; that plaintiff sought to avoid "further 'hassle', which was distasteful to him" while plaintiff "was disabled, was without income, was under the care of physicians, was suffering the effects of his injury"; that "defendant has, by its course of conduct, evidenced a breach of this [fiduciary trust] relationship amounting to utter lack of good faith and bordering on the deceitful". These allegations were amplified in plaintiff's reply to affirmative defenses with the additional allegation that plaintiff is "entitled to an award of punitive damages because of the conduct of the defendant, which was coercive bad-faith conduct inducing duress, conduct

involving misrepresentation, concealment of material facts, deceitful and amounting in law to malicious conduct". Concluding, plaintiff requested damages "by way of breach of contract, express or implied, misrepresentation and deceit, breach of a fiduciary duty, both express in amount as provided for in the policy and punitive in nature".

On the fifth day of trial, plaintiff sought to amend the complaint for the purpose of introducing evidence of emotional distress. After recognizing that complaints serve a notice function with flexibility, the court ruled that amendment was unnecessary since "there is a general claim that there is emotional distress and difficulties that may have arisen, * * * within the context of the original complaint"; "I will allow that testimony * * * within the framework of emotional distress arising out of the failure or alleged failure of a defendant company to meet its obligations under an insurance contract".

We agree with the trial court that plaintiff's factual statements and averments were sufficient to put defendant on notice that plaintiff was seeking emotional distress damages for breach of contract. As we earlier outlined, and as the *McDuffie* Court imparted, since emotional distress "can be traced to the act complained of, and is such as would naturally flow from the alleged injury, it need not be specifically averred". *McDuffie, supra,* 293-294. Furthermore, plaintiff's claim for "punitive" damages was akin to a specific averment of emotional distress since such damages have traditionally encompassed compensation for injured feelings, *Detroit Daily Post Co v McArthur,* 16 Mich 447, 453-454 (1868), *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976), and earlier cases have evidenced a lenient attitude toward the

requirement that the mental anguish basis for exemplaries be specially pleaded. See *Wise v Daniel,* 221 Mich 229, 234; 190 NW 746 (1922); *Smith v Jones,* 382 Mich 176, 206-207; 169 NW2d 308 (1969) (ADAMS, J., concurring). Finally, GCR 1963, 118.3 provides for great liberality in the amendment of pleadings; even substantial omissions from a complaint should be overlooked if the complaint is nonetheless sufficient to provide the defendant with notice of the claims against which defendant must defend. *City of Auburn v Brown,* 60 Mich App 258; 230 NW2d 385 (1975). Even though the trial court found amendment unnecessary, the sense of the above authorities indicates that plaintiff should have been permitted to pursue the emotional distress claim in any event.

The novel nature of plaintiff's claim in contract, premised on the dearth of Michigan cases issued prior to this 1976 trial allowing emotional distress damages against insurers, should not add to plaintiff's burden of pleading. If we were to so rule today, we would likely deter future filings of untested, imaginative and persuasive claims. Indeed, defendant cannot argue that it has been unfairly surprised if plaintiff's novel claim unexpectedly succeeds, so long as defendant had been reasonably notified from the pleadings that such a claim would be made.

In substance, then, we find that defendant had been reasonably informed of the nature of the claim that defendant was called upon to defend pursuant to Rule 111.1(1) and that the claim for emotional distress was sufficiently alleged as required by the rule of *McDuffie* and memorialized in Rule 112.8. No abuse of discretion having been shown in the trial court's ruling that plaintiff's emotional distress claim was adequately framed in

its complaint, the Court of Appeals determination that the complaint was insufficient is reversed.

## VI. WHERE AN INSURANCE CONTRACT HAS BEEN DETERMINED TO BE PERSONAL IN NATURE, PLAINTIFF MAY NOT RECOVER BOTH EMOTIONAL DISTRESS AND EXEMPLARY DAMAGES

After recognizing that a contract cause of action for emotional distress damages may lie for breach of a disability contract, the Court of Appeals reversed the jury's award of such damages on the ground that they were not sufficiently pled. Turning its attention to plaintiff's request for punitive or exemplary damages, the panel concluded:

"The exemplary damage question is the most difficult one for us. In the first section of this opinion, we held that exemplary damages could not be recovered in this type of case because it was possible to recover damages for mental anguish and exemplary damages were intended to compensate for the same injuries. But, defects in the pleadings have prevented recovery of mental anguish damages. The plaintiff did not specifically request exemplary damages. But he did request punitive damages. Historically, punitive damages have overlapped exemplary damages. And exemplary damages in turn have overlapped damages for mental anguish which we have held are recoverable in this type of breach of contract action. *This multiple overlap factor weighs in favor of allowing some recovery." Kewin, supra,* 656-657.

*"It is a close question, but we believe that the allegations were sufficient to support an exemplary damage recovery in this case since there will be no direct recovery for mental anguish damages." Id.,* 657. (Footnote omitted, emphasis supplied.)

We agree with both the Court of Appeals and our Brother KAVANAGH's assessment that exem-

plary damages, much like emotional distress damages, are intended to compensate for injured feelings. See *Detroit Daily Post Co v McArthur,* 16 Mich 447, 453-454 (1868); *McFadden v Tate,* 350 Mich 84, 89; 85 NW2d 181 (1957); *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976). The focus of the trial court's instruction on both exemplary and emotional distress damages was likewise directed to the alleged injury to plaintiff's feelings occasioned by defendant's conduct.[24]

Since both damage claims are intended to compensate for the same injury and since the trial court's instruction on both claims focused on the same injury resulting from the same conduct, the conclusion is inescapable that the jury's award of both exemplary and emotional distress damages constituted double recovery for an identical wrong. Where damages are intended to compensate, as in the case of exemplary damages, rather than to punish, this Court will not indulge a double recovery. Unlike the Court of Appeals, our finding that plaintiff sufficiently alleged a claim for emotional distress resulting from breach of contract requires us to uphold the jury's award of $75,000 for such damages. Since the jury's award of $50,000 for exemplary damages compensated for the same injury resulting from the same conduct, we must

---

[24] As to exemplary damages, the court instructed that such damages "are intended only as compensation for the supposed aggravation of an *injury to the feelings* of another by *wanton or reckless acts of a defendant*" (emphasis supplied). With respect to emotional distress damage, the jury was instructed that "if you find the plaintiff did suffer *emotional distress* as a result of the defendant's *knowing, reckless, bad-faith conduct,* then you must award a sum adequate to compensate for mental and emotional loss or injury, as you believe he was subjected to the effects caused by the defendant's conduct" (emphasis supplied). It is clear that both instructions had as their purpose the compensation of injured feelings arising from defendant's wanton, reckless, knowing, bad-faith conduct. The congruency of these instructions and the paradox that they consequently created for the jury is arguably evidenced by the jury's request that the court reiterate its instruction on exemplary damages.

vacate that award as constituting an impermissible double recovery in this instance.[25]

## VII. CONCLUSION

We hold that emotional distress may foreseeably result from breach of a disability insurance contract and that such contracts are primarily personal, involving matters of mental concern and solicitude rather than primarily commercial, involving matters of pecuniary aggrandizement. Suits alleging emotional distress damages for breach of disability insurance contracts properly come within the *Stewart-Hadley* rule allowing the award of such damages. In this instance, plaintiff has sufficiently pled such a claim. The jury's award of both emotional distress and exemplary damages as compensation for the same injury resulting from the same conduct, however, constituted impermissible double recovery.

We, therefore, reverse the Court of Appeals determination that plaintiff's emotional distress claim was insufficiently pled and reinstate the jury's award of emotional distress damages. We likewise reverse the Court of Appeals decision to uphold the jury's award of exemplary damages and vacate that award. In all other respects, the Court of Appeals is affirmed.

No costs, neither party having prevailed in full.

---

[25] By vacating the jury's award of exemplary damages in this particular instance, we do not intend to signal that future parties may not postulate alternative claims for emotional distress as well as exemplary damages arising from the breach of an insurance contract. What we hold in this regard is that both claims of damage may not be recovered as compensation for the same injury and resulting from the same conduct as in this instance.